*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *JOSEPH B. CARDOZA,* )<br>)<br>*Plaintiff* )<br>)<br>v. )<br>)<br>*MICHAEL J. ASTRUE,[1]* )<br>*Commissioner of Social Security,* )<br>)<br>*Defendant* ) | *Docket No. 06-130-B-W* |

### *REPORT AND RECOMMENDED DECISION[2]*

This Social Security Disability ("SSD") appeal raises the question whether the administrative law judge appropriately found that the plaintiff's mental and physical limitations did not prevent him from returning to his past relevant work before the date he was last insured. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff last met the insured status requirements for SSD on December 31, 1991, Finding 1, Record at 22; that the plaintiff suffered from the severe impairments of

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted currently serving Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on July 3, 2007 pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

hereditary coproporphyria[3] and post-traumatic stress disorder ("PTSD") but that neither met or equaled the criteria of any impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404 on or before the date last insured, Finding 3, *id*.; that the plaintiff's testimony regarding his restrictions was not supported by the relevant medical evidence and was not credible in establishing any significant restrictions before the date last insured, Finding 4, *id.*; that at all times through the date last insured the plaintiff retained the residual functional capacity to perform heavy, semiskilled work, Finding 5, *id*.; that the plaintiff's past relevant work as a truck driver did not impose requirements exceeding his residual functional capacity at the relevant time and that he was therefore capable of performing his past relevant work, Finding 6, *id*.; and that the plaintiff therefore was not under a disability, as that term is defined in the Social Security Act, at any time before the date last insured, December 31, 1991, Finding 7, *id*. The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 647 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of demonstrating inability to return to past relevant work.

---

[3] Coproporphyria seems to be a group of disorders, present in the urine and feces, that result from a disturbance in porphyrin metabolism causing increased formation and excretion of porphyrin or its precursors. "Porphyrin" is "any of a group of nitrogen-containing organic compounds that occur in protoplasm and form the basis of animal and plant respiratory pigment[.]" *Taber's* (*continued on next page*)

20 C.F.R. § 404.1520(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service Rulings 1975-1982* ("SSR 82-62"), at 813.

## Discussion

The plaintiff apparently contends that both of the identified severe impairments created sufficiently severe limitations before December 31, 1991 to render him incapable of returning to his past relevant work at that time. Statement of Specific Errors ("Itemized Statement") (Docket No. 6) at 1-7. He also asserts that the administrative law judge wrongly interpreted raw medical data on his own. *Id*. at 7. Specifically, he avers that "[t]here is no suggestion in the record that there were no symptoms associated with these conditions in the interim [between the date last insured and the present]." *Id*. at 6. This is not the applicable test. It is the plaintiff's burden to establish that symptoms sufficiently severe to make a return to his past relevant work impossible existed before the date last insured. 20 C.F.R. § 404.1520(e)-(f); *Yuckert*, 482 U.S. at 146 n.5. It is not enough to show merely that the impairments existed before that date, *Deblois v. Secretary of Health & Human Servs.*, 686 F.2d 76, 79 (1st Cir. 1982), or that disabling symptoms existed after that date.

The plaintiff first attacks, Itemized Statement at 2, the administrative law judge's reliance on the reports of the state-agency physicians and psychologists who reviewed his medical records, because they did not have an opportunity to review the medical records his representative presented to the administrative law judge shortly before the hearing, Record at 24. The administrative law judge did observe as follows:

---

*Cyclopedic Medical Dictionary* (14th ed. 1981) at 334, 1138.

3

> State Agency physicians and psychologists found that the evidence of record was insufficient evidence to establish that the claimant's physical impairments (Exhibits 5F and 8F) and mental impairments (Exhibits 4F and 9F) were disabling on or before the date his insured status expired. These assessments are entitled to weight (20 C.F.R. 404.1527(f)[] and Social Security Ruling 96-6p), and are consistent with the lack of significant medical treatment while the claimant was insured.

*Id*. at 21. The state-agency reports are all dated before the date of the letter conveying the additional records to the administrative law judge. *Compare id*. at 171, 192, 246 & 247 *with id*. at 24. If the administrative law judge had relied solely on the assessments made by the state-agency reviewers under these circumstances, the plaintiff might well be entitled to remand. *See, e.g.*, *Brown v. Barnhart*, 2006 WL 3519308 (D. Me. Dec. 6, 2006), at *3.

However, the administrative law judge also specifically discussed the records submitted after the state-agency reviewers had submitted their evaluations. That material was given exhibit numbers 10F through 21F. Record at 2, 28. From that material, the plaintiff cites, Itemized Statement at 2-4, a letter from Dr. Andrew Geller dated February 25, 1980, and Dr. Geller's note dated April 10, 1980; a letter from Professor Karl Anderson dated July 2, 1981; and a decision by the Board of Veterans Appeals with respect to his physical impairment. Those entries appear in Exhibits 12F and 10F. Record at 261-398, 403-30. The administrative law judge's opinion referred to both exhibits numerous times. *Id*. at 20-21. He observed, *inter alia*, that the records showed complaints of abdominal pain, nausea and diarrhea in the 1970s and early 1980s but that numerous related medical tests were within normal limits and "only a pre-pyloric ulcer" was diagnosed; that this evidence "fails to document that the claimant received any treatment whatsoever for this condition from approximately 1982 through March 2004;" and that his service-connected disability rating from February 25, 1974 through September 2003 [sic] was only 10%. *Id*. at 20. In addition, none of the records cited by the

4

plaintiff suggests any limitations on work-related activities resulting from any physical impairment. Indeed, the plaintiff worked, apparently full-time, until 1986. *Id*. at 31, 95.

The plaintiff suggests, Itemized Statement at 7, that the administrative law judge, as demonstrated by this section of his opinion, interpreted raw medical data, which an administrative law judge may not do, *see Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990). However, in order to determine whether certain records contain any evidence of medical treatment of any kind, one need not be medically trained. The same is true of the conclusion that I have reached by reviewing the specific pages of those records cited by the plaintiff: that they do not suggest any limitations on work-related activities.

With respect to the plaintiff's mental impairment, he argues that his post-traumatic stress disorder ("PTSD") "became totally disabling during the 1980[]s," citing an evaluation report from Ralph Grover, RN, MSN; a 1980 evaluation by a social worker; a doctor's note from October 11, 1979; a letter from Eldrick Dumont; and a report from Dr. Sally Weiss. Itemized Statement at 4-6. Again, by definition, no impairment could have been disabling before 1986, when the plaintiff was in fact still working regularly.

The Grover evaluation report is dated October 6, 2003. Record at 145. The plaintiff relies on the following paragraph:

> I feel that the PTSD symptoms reported to me through this assessment are more profound and have a greater impact on Mr. Cardoza on a day-to-day basis than he can admit to. He reports to me, "his life is survival, he is surviving" and he feels there is nothing wrong with that. There is no need to change "what is." PTSD from Vietnam has had a very negative effect on this veteran's life and is still incapacitating him.

*Id*. at 147. This statement does not tie the "very negative effect," to the extent that that phrase may be construed as suggesting some limitation on the ability to perform basic work activities, to any particular period before 2003, and certainly not to the period between 1986 and 1991. The statement

that the PTSD "is still incapacitating him" is, at best, if construed as applicable to the plaintiff's ability to work, an expression of opinion on an issue reserved to the commissioner, 20 C.F.R. § 404.1527(e)(1), as well as lacking any reference to the starting point inherent in the use of the word "still." Grover's evaluation will not bear the weight the plaintiff seeks to place upon it.

The 1980 "evaluation" is a brief note from a social worker who noted the plaintiff's report of social and motivation difficulties and a plan for "individual psychotherapeutic intervention to deal with possible readjustment difficulties 'post Vietnam Syndrome.'" *Id.* at 300. It does not mention any work-related difficulties or any symptoms that would necessarily have an effect on the plaintiff's ability to perform work activities, as those symptoms are categorized in Social Security regulations. More important, the report is dated January 17, 1980, six years before the plaintiff stopped working.

The doctor's note from 1979 cited by the plaintiff records only the doctor's opinion that the plaintiff then "need[ed] psychiatry [sic] help and that he should be referred for such," and the fact that the plaintiff "walked out of the hospital this morning before any arrangements could be made and before the major part of his in-patient workup could be done." *Id.* at 441. Again, this entry was made well before the plaintiff stopped working and offers nothing from which a reasonable inference to the effect that the plaintiff's ability to perform work-related activities was significantly impaired could be drawn. Contrary to the plaintiff's suggestion, Itemized Statement at 4, 5, neither walking out of a hospital against medical advice nor holding many different jobs is necessarily a sign of severe mental impairment in Social Security terms.

The letter from Eldrick Dumont, who identifies himself as a retired Navy combat medic, is dated July 6, 2004. Record at 431. Dumont opines that the plaintiff's Social Security claim "is valid and appropriate." *Id*. While an armed forces medic is not an "acceptable medical source" under Social Security regulations for evidence of the existence of an impairment, 20 C.F.R. § 404.1513(a),

6

he may provide evidence of the severity of an impairment, 20 C.F.R. § 404.1513(d)(1). In this case, however, Dumont offers nothing beyond his conclusion that the plaintiff's claim is "appropriate" that could possibly be interpreted as an evaluation of the severity of the plaintiff's PTSD between 1986 and December 31, 1991 or its effect at that time on his ability to perform work-related activities.

Finally, the plaintiff relies on the report of Dr. Sally R. Weiss, a psychiatrist who spent "a little bit over an hour" with him in March 2004. Record at 399, 402. As the plaintiff notes, Itemized Statement at 6, Dr. Weiss assigned him a global assessment of functioning ("GAF") score of 35 at that time,[4] Record at 401. She also wrote: "This man has major impairment at work. He cannot work for pay, has not been able to for 18 years." *Id*. at 400. That statement is followed by the one on which the plaintiff relies, Itemized Statement at 6:

> With an Axis-I diagnosis of posttraumatic stress disorder, no Axis-II disorder, an Axis-III disorder of severe pain positing arthritis, positing migraine not treated, and Axis-IV of severe stress of combat in Vietnam, and Axis-V a GAF of 35 that is posited above, with compulsive behavior, inability to work, alienation from relatives, distance from almost every other human being on the face of the earth, this man is severely disabled. He was unable to work at a steady job when he returned from Vietnam, had about fifty jobs from 1970-1986, and no jobs where he has earned a penny since then.

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. A score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id*. (boldface omitted). A score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id*. (boldface omitted).

Record at 401.[5]  Given the earlier observation, it is clear that the "inability to work" to which Dr. Weiss referred in this paragraph was a present inability, existing at the time she wrote her report.  Her statement that the plaintiff "was unable to work at a steady job . . . had about fifty jobs from 1970-1986" can only have been based on what the plaintiff told her.  The plaintiff has not shown that the work he performed until 1986, however many different employers he may have had, was not substantial gainful activity.  The fact that he retains eligibility for SSD through December 31, 1991 strongly suggests that it was substantial gainful activity.  Dr. Weiss's report is insufficiently specific about the time period at issue to deem the report a retrospective diagnosis of a severe mental impairment that had more than a minimal effect on the plaintiff's ability to perform work-related activities at that time.  The administrative law judge did not err in rejecting any conclusion that Dr. Weiss's report provided medical evidence of a severe mental impairment rendering the plaintiff unable to return to his past relevant work before the date last insured.  *Id*. at 21.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

---

[5] At oral argument, counsel for the plaintiff contended that "the very nature of a psychiatric condition" is that its diagnosis is based on subjective complaints, that PTSD was "consistent with" the plaintiff's military service in Vietnam and his testimony that he could not keep a job thereafter, and that the plaintiff's unwillingness to participate in psychiatric treatment "goes with the nature of" PTSD.  He stated that these factors and the plaintiff's isolation and "hiding in the woods" for a period of 18 to 20 years were specific evidence that the PTSD affected the plaintiff's ability to engage in work-related activities between 1986, when he stopped working, and 1991, when he passed his date last insured.   I disagree.  None of this demonstrates any particular effect on the plaintiff's ability to engage in any specific work-related activity at the relevant time; none of the mental health care professionals' notes and reports in the administrative record appears to make such a connection.

*within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 11th day of July, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge
